UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| **MARY ELIZABETH PRICE,** | } |
| Plaintiff, | } |
| v. | } Case No.: 1:16-cv-01127-RDP |
| **CAROLYN W. COLVIN,** **COMMISSIONER OF SOCIAL SECURITY** | } |
| Defendant. | } |

**MEMORANDUM OF DECISION**

Plaintiff Mary Elizabeth Price ("Plaintiff" or "Price") brings this action pursuant to Section(s) 205(g) and/or 1631(c)(3) of the Social Security Act ("the Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her claims for a period of disability, disability insurance benefits ("DIB"), and/or Supplemental Security Income ("SSI"). *See*, 42 U.S.C. §§ 405(g) and/or 1383(c). Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

**I.    Proceedings Below**

On February 13, 2013, Plaintiff filed a Title II application for disability insurance benefits. (R. at 212-13). The claim was denied on March 14, 2014. (R. at 148-54). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") on May 15, 2013. (R. at 155-56). On June 24, 2014, a hearing was held before ALJ Tracy S. Guice. (R. at 164). In her December 23, 2014 decision, the ALJ determined Plaintiff not disabled under sections 216(i) and

223(d) of the Act, from February 1, 2012 through the date of the decision. (R. at 91). Following the ALJ's decision, Plaintiff appealed to the Appeals Council. (R. at 69-71). The request for review was denied on May 10, 2015. (R. at 1-7). This denial made the ALJ's decision the final decision of the Commissioner of the SSA, and ripe for this court's review. (R. at 1).

Prior to the alleged onset of disability, Plaintiff had previously held positions as a legal assistant, paralegal, social worker, and teacher. (R. at 255). Plaintiff testified she had experienced some symptoms prior to the alleged disability onset date, and in 2011 sought treatment in the emergency room for pain, weakness, and fatigue, but received no diagnosis or explanation for her symptoms. (R. at 18). She has not worked since May 2011, citing a hostile work environment as the reason for leaving her last job as a legal assistant.[1] (R. at 35, 255). Plaintiff testified that she experienced some symptoms at the time, but "not enough to keep [her] from working." (R. at 18, 35). Plaintiff testified to missing work about one day per month due to fatigue.[2] (R. at 35). Plaintiff further testified that by February 2012 she "couldn't do it anymore" and "started going to the doctor, trying to figure [the cause for her symptoms] out." (R. at 18). Plaintiff alleges she became disabled on February 1, 2012 as a result of fibromyalgia, hypothyroidism, dysautonomia, conversion disorder, depression, anxiety, PTSD, history of vasovagal syncope, vitamin B-12 deficiency, and sleep apnea with restless leg syndrome.[3] (R. at 132, 212).

---

[1] The record does not include further details regarding the "hostile work environment", and does not indicate whether Plaintiff filed a lawsuit or EEOC charge as a result of the alleged hostile work environment. Plaintiff's Memorandum Brief in Support of Complaint refers to her job as a legal assistant as one that "exacerbated her major depressive disorder, generalized anxiety disorder, and PTSD." (R. at 35, Pl.'s Mem. at 5).

[2] The record does not indicate any particular diagnosis related to fatigue. Plaintiff had not yet been diagnosed with fibromyalgia. (R. at 35, 646).

[3] Plaintiff is prescribed CPAP therapy for mild obstructive sleep apnea. (R. at 363). The record is unclear as to whether she is compliant with CPAP use. The record does include one physician's note stating that plaintiff was either not currently using her machine, or only uses it sometimes. (R. at 581). At the ALJ hearing, the Plaintiff found that she uses her CPAP machine regularly. (R. at 21).

Throughout the period of her alleged disability, Plaintiff was treated and/or assessed by two primary care physicians and multiple specialists. (R. at 137-39). She received multiple diagnoses, including fibromyalgia, connective tissue disease, disautonomia, mild obstructive sleep apnea, chronic pain syndrome, spinal stenosis, near syncope, depression, anxiety, and PTSD. (*Id.*) Plaintiff consistently presented with self-reported severe pain, numbness, weakness, fatigue, trouble concentrating, and dizziness. (R. at 120-23, 560-62, 581-83, 650-52). Plaintiff's treating physicians, performed extensive diagnostic testing and examinations and results were unremarkable excepting trace positive anti-CCP[4], mild stenosis with minimal degenerative changes, and consistent trigger point tenderness. (R. at 441-43, 575-78, 580-84, 590-603). It was noted frequently that Plaintiff experienced no range of motion limitations, synovitis or joint degeneration, or any other type of degeneration frequently experienced with Plaintiff's diagnosed conditions and symptoms. (R. at 580-84). Plaintiff's physicians' characterizations of symptoms varied from qualifying symptoms as severe and debilitating as a result of fibromyalgia to "somewhat vague" with "no clear cause for … pain." (R. at 425, 577, 985-91).

Plaintiff's activities of daily living up to and at the time of the ALJ hearing included caring for her pets, practicing yoga, taking short walks when she feels able, watching television, checking email, paying bills, attending church and alcoholics anonymous meetings, and grocery shopping. (R. at 25-28). Plaintiff testified that she only occasionally drives, and often requires assistance from her husband to complete tasks, including grocery shopping. (R. at 26). Plaintiff testified she is able to prepare simple meals for herself, lift around eight pounds, and bathe or

---

[4] Anti-cyclic citrullinated peptide (anti-CCP) antibody testing is used most to diagnose rheumatoid arthritis. Plaintiff's test results indicate a trace positive result. (R. at 580-84). However, due to the lack objective evidence of synovitis and a negative rheumatoid factor test, Plaintiff was not diagnosed with rheumatoid arthritis. *Id.*

shower once or twice per week. (R. at 28, 36). Plaintiff was 49 years old at the time of the hearing. (R. at 15).

In June 2015, nearly one year after the hearing before the ALJ, Plaintiff's primary care physician completed a "Fibromyalgia Medical Assessment." (R. at 985-91). The assessment noted that Plaintiff's treatment for fibromyalgia began in September 2011 and met the 2010 diagnostic criteria for fibromyalgia outlined in SSR 12-2P. (*Id.*). The assessment further noted Plaintiff's self-reported symptoms of objective signs of tenderness, muscle weakness, and fatigue, and stated that all other possible causes for Plaintiff's pain other than fibromyalgia had been ruled out, but that "at times" Plaintiff's symptoms were related to "emotional factors." (*Id.*). In the assessment, the physician estimated Plaintiff would be able to sit, stand, and/or walk for less than two hours in an eight-hour work day, could never carry 20 pounds or more, and would likely miss more than four days of work per month. (*Id.*).

The Fibromyalgia Medical Assessment, and some of Plaintiff's self-reported symptoms and limitations, conflicted with the Residual Function Capacity Assessment ("RFC") completed in March 2013 as part of the Disability Determination. (R. at 141-46, 985-91). In the RFC, the examiner assessed that Plaintiff could lift ten to twenty pounds and stand, walk, and/or sit for six hours in an eight-hour work day. (R. at 141). The RFC further placed environmental and postural limitations on Plaintiff. (R. at 143). The Mental RFC, which was included in the same report, described Plaintiff's abilities to carry out detailed instructions, maintain attention and concentration for extended periods of time, interact appropriately with the general public, accept instructions and criticism, and get along with coworkers as "moderately limited." (*Id.*) No significant limitations were placed on the remaining categories. (R. at 141-44). Notably, the examination declared Plaintiff's statements regarding symptoms as only "partially credible," and

4

those regarding intensity, persistence, and functionally limiting effects as not supported by the objective medical evidence alone. (R. at 140-41).

At the hearing, when given hypotheticals with factors and limitations similar to those indicated in Plaintiff's RFC, the Vocational Expert ("VE") testified that someone similarly situated to Plaintiff could not performed her past work, but there are at least three jobs in significant numbers in the national economy that such a person could perform. (R. at 38-39). The VE further testified that under those same circumstances, if the hypothetical claimant were to miss more than two days of work per month, no suitable work would exist in the national economy. (R. at 40).

## II. ALJ Decision

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a severe medically determinable impairment ("MDI") or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. *Id.* Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d),

404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the ALJ determines that the claimant is capable of performing past relevant work, then the claimant is deemed not disabled. *Id.* If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

The SSA has further expanded the process specifically for fibromyalgia disability claims in SSR 12-2p policy interpretation ruling which serves to "provide[] guidance on how we develop evidence to establish . . . [an MDI] of fibromyalgia . . . and how we evaluate [fibromyalgia] in disability claims." 77 Fed. Reg. 43, 640-01(July 25, 2012). SSR 12-2p states that if a disability claim is based wholly or in part on fibromyalgia, the claimant's symptoms must be considered. *Id.* Fibromyalgia is a MDI and can be the basis for disability if established by appropriate medical evidence from an accepted medical source, including but not limited to

"longitudinal records reflecting ongoing medical evaluation and treatment." *Id.* SSR 12-2p specifically requires that a diagnosis alone cannot serve as the basis for establishing an MDI of fibromyalgia; rather, the evidence must document physician-reviewed medical history and physical exams to determine whether "consistent with the diagnosis of fibromyalgia . . . symptoms have improved, worsened, or remained stable over time, and establish the physician's assessment over time of the person's physical strength and functional abilities." *Id.* Specifically, the claimant must not only be diagnosed with fibromyalgia, but meet the criteria outlined in either the 1990 American College of Rheumatology Criteria for the Classification of Fibromyalgia[5] or the 2010 ACR Preliminary Diagnostic Criteria.[6] *Id.* The five-step test outlined above is not altered under SSR 12-2p. *Id.* Fibromyalgia is not a listed impairment, so under step three, fibromyalgia must medically equal a listed impairment either on its own or in combination with one or more other MDIs. *Id.* If the claimant's fibromyalgia or combination of that condition and any other MDIs do not medically equal a listed impairment, an RFC assessment will be required. *Id.* Due to the waxing and waning of fibromyalgia symptoms, the claimant's longitudinal medical and treatment record is considered. *Id.* The usual vocational considerations are applied with the inclusion of symptoms typically associated with fibromyalgia: widespread pain, fatigue, and/or other fibromyalgia symptoms resulting in exertional limitations, non-exertional physical or mental limitations, and/or non-exertional environmental limitations. *Id.* It is noted that adjudicators must specifically consider the possibility of these limitations, which

---

[5] *See* Frederick Wolfe et al., *The American College of Rheumatology 1990 Criteria for the Classification of Fibromyalgia: Report of the Multicenter Criteria Committee*, 33 Arthritis and Rheumatism 160 (1990).

[6] *See* Frederick Wolfe et al., *The American College of Rheumatology Preliminary Diagnostic Criteria for Fibromyalgia and Measurement of Symptom Severity*, 62 Arthritis Care & Research 600 (2010).

7

may "erode [the] occupational base . . . preclud[ing] the use of a rule in appendix 2 to direct decision," requiring the use of rules in appendix 2 as a framework and/or a vocational expert. *Id.*

SSR 12-2p further outlines the two-step process for evaluating claimant's statements regarding symptoms and functional limitations. *Id.* First, medical signs and findings must show that the claimant has "a MDI(s) which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* As fibromyalgia is a MDI, this first step is satisfied. Second, in evaluating the intensity and persistence of the symptoms and the extent to which they may limit ability to work, if a claimant's statements are not substantiated by objective medical evidence, "all of the evidence in the case record, including the person's daily activities, medications or other treatments the person uses, or has used, to alleviate symptoms; the nature and frequency of the person's attempts to obtain medical treatment for symptoms; and statements by other people about the person's symptoms," is considered. *Id.* Credibility is to be determined in accordance with SSR 96-7p[7], requiring examination of the individual's daily activities; location, duration, frequency, and intensity of pain or other symptoms; factors that precipitate and aggravate symptoms; type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. *Id.*

---

[7] SSR 96-7p states in part: "[W]henever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence . . . [the] individual's symptoms . . . will be determined to diminish the individual's capacity for basic work activities to the extent that the individual's alleged functional limitations and restrictions due to symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the case record."

Here, the ALJ determined that Plaintiff had not engaged in substantial gainful activity during the period of alleged disability and had the following severe MDI's: "fibromyalgia; sleep apnea; history of dysautonomia; status post esophageal benign tumor removal; mild cervical stenosis; arthralgias; major depressive disorder; generalized anxiety disorder; and posttraumatic stress disorder." (R. at 79). As such, the ALJ determined steps one and two of the five-step process were satisfied. (R. at 79). However, the ALJ determined that none of Plaintiff's severe MDIs met or medically equaled a listed impairment in 20 CFR Part 404, Subpart P, Appendix 1. (R. at 80). The ALJ specifically noted that no examining or treating physician has reported otherwise, nor does fibromyalgia, arthralgia, or sleep apnea "result in the marked functional limitations that would suggest medical equivalence to any listed impairment." (R. at 80). The ALJ further stated that she considered the entire record, including Plaintiff's testimony, and analyzed all listings. (R. at 80-81). As step three of the five-step process was not satisfied, the ALJ performed an RFC assessment in accordance with steps four and five of the five-step process. (R. at 80-89).

The ALJ determined that Plaintiff did not have the RFC to perform past relevant work. (R. at 90). However, the ALJ determined that Plaintiff did have the RFC "to perform a reduced range of light work" including the ability to lift and carry ten to twenty pounds, sit for six hours, stand or walk for 4 hours, balance and climb, perform simple routine tasks, sustain concentration and attention for two hours, and tolerate occasional non-transactional interactions with the public. (R. at 81-89). The ALJ included exertional, postural, environmental, and mental limitations in her determination. *Id.* After considering Plaintiff's RFC, education, work experience, and age, the ALJ determined there are jobs Plaintiff could perform that exist in significant numbers in the economy. (R. at 90-91). For these reasons, the ALJ determined

Plaintiff to be not under disability from February 1, 2012 through the date of decision, December 23, 2014. (R. at 91).

III. **Plaintiff's Argument for Remand or Reversal**

Plaintiff points to three grounds for remand or reversal: (1) the ALJ "erred in failing to consider SSR 12-2p policy interpretation ruling" (Pl.'s Mem. at 21-22); 77 Fed. Reg. 43, 640-01(July 25, 2012); (2) the ALJ "erred in properly assessing the [Plaintiff's] and other witness' credibility under SSR 12-2p policy interpretation ruling" (Pl.'s Mem. at 23-24); 77 Fed. Reg. 43, 640-01(July 25, 2012); and (3) the ALJ "erred in her assessment of [RFC] following an MDI of fibromyalgia" (Pl.'s Mem. at 24-27). The court addresses each of these potential grounds for remand or reversal.

IV. **Standard of Review**

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See Id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to

support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

V. **Discussion**

    A. **The ALJ Properly Considered SSR 12-2p Policy Interpretation Ruling**

Plaintiff first contends the ALJ erred in failing to consider SSR 12-2p in determining Plaintiff's MDI of fibromyalgia, accusing the ALJ of "asserting that fibromyalgia is not a 'real' disability." (Pl.'s Mem. at 21-22, 24-26); 77 Fed. Reg. 43, 640-01(July 25, 2012). This argument is without merit. In fulfilling steps one and two of the required five-step process, the ALJ not only concluded that Plaintiff had multiple MDIs, including fibromyalgia, but that her impairments were severe. (R. at 79); 20 C.F.R. § 404.1520(a)(4)(ii)(c); 61 Fed. Reg. 34, 468-01 (July 2, 1996). In determining Plaintiff's MDIs and their severity, the ALJ did not specifically discuss the details of Plaintiff's fibromyalgia and symptoms, nor did she cite SSR 12-2p. (R. at 79). However, such a specific citation is not required by our Circuit's precedent or SSR 12-2p itself. 77 Fed. Reg. 43, 640-01(July 25, 2012); *See, e.g.*, *Steele v. SSA,* No. 5:14-cv-01038-SGC, 2015 U.S. Dist. LEXIS 124869 at 10-11 (N.D. Ala. Sep. 18, 2015) (quoting *Hutchison v. Bowen*, 787 F.2d 1461, 1463 (4th Cir.1986) ("it is not required that the [ALJ] mechanically recite the evidence leading to [his] determination")). The ALJ incorporated detailed information about Plaintiff's fibromyalgia in the assessment of Plaintiff's RFC and determination of whether Plaintiff's MDIs met or equaled a listing, including medical records, Plaintiff's testimony, and

11

self-reported symptoms in further compliance with SSR 12-2p. (R. at 80-89); 77 Fed. Reg. 43, 640-01(July 25, 2012); 20 C.F.R. pt. 404, subpt. P, app. 1.

The ALJ properly stated that none of Plaintiff's MDIs (including fibromyalgia) met a listed impairment, and further determined that none medically equaled a listing. (R. at 80); 20 C.F.R. pt. 404, subpt. P, app. 1; *See also*, 20 C.F.R. 404.1520(a)(iii)). The ALJ properly analyzed all listings including "paragraph B" and "paragraph C" criteria[8]. (R. at 80-81). Although Plaintiff contends that the ALJ's statement that "fibromyalgia, arthralgias, and sleep apnea . . . do not result in the marked functional limitations that would suggest medical equivalence to any listed impairment" was in error (Pl.'s Mem. at 21), the court disagrees. The ALJ supported this determination by stating that "no examining or treating source has reported that claimant has an impairment that meets or medically equals . . . a listed impairment."[9] (R. at 80); *See 20* C.F.R. § 404.1526.

For these reasons, the court finds that the ALJ properly considered SSR 12-2p Policy Interpretation Ruling and on this ground the decision of the Commissioner is due to be affirmed.

---

[8] "Paragraph B" and "paragraph C" criteria are included in listings 12.04 and 12.06, Mental Disorders.

[9] Plaintiff characterizes the ALJ's language as stating a conclusion that Plaintiff's MDIs *cannot* meet a listing, but the reading which is more consistent with the ALJ's decision and the record is that the ALJ found Plaintiff did not make such a showing in this particular case. (R. at 80); 20 C.F.R. § 404.1526; 42 U.S.C.S 405(g). Plaintiff cited a "Fibromyalgia Medical Assessment" as evidence of Plaintiff's MDI of fibromyalgia and its severity. (Pl.'s Mem. at 22); (R. at 985-91). This document has no bearing on the determination of whether the ALJ erred in her decision as the Assessment was not completed until June 10, 2015, nearly six months after the ALJ's decision. (R. at 985-91); *See*, *Wilson v. Comm'r of Soc. Sec.*, 647 F. App'x 951, 952 (11th Cir. 2016) ("we may not consider evidence that was presented to the Appeals Council but not to the ALJ"). Finally, this point is moot as Plaintiff does not claim that any of the stated MDIs met or medically equaled a listing, and instead simply uses the statement out of context to imply the ALJ did not consider fibromyalgia an MDI in opposition to SSR 12-2p. (Pl.'s Mem. at 21-22); 77 Fed. Reg. 43, 640-01(July 25, 2012); *See, e.g.*, *Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 825, 828 n.1 (11th Cir. 2006) (quoting *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed")).

**B.  The ALJ Properly Assessed Plaintiff's and Other Witness' Credibility Under SSR12-2P Policy Interpretation Ruling**

In assessing the credibility of Plaintiff's statements regarding her symptoms, the ALJ determined that although Plaintiff's MDIs "could reasonably be expected to cause some of the alleged symptoms . . . the claimant's statements concerning intensity, persistence, and limiting effects . . . are not entirely credible." (R. at 82). Plaintiff contends this assessment conflicts with SSR 12-2p's requirement to follow SSR 96-7p[10] in evaluating claimants' statements regarding symptoms and functional limitations. (Pl.'s Mem. at 23); 77 Fed. Reg. 43, 640-01(July 25, 2012)). Additionally, Plaintiff accuses the ALJ of dismissing Plaintiff's husband's testimony "simply because of his relationship with the claimant." (Pl's Mem. at 24). The court disagrees with both of Plaintiff's assertions.

Under SSR 96-7p, "intensity and persistence of an individual's symptoms [must be evaluated to] determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities." 77 Fed. Reg. 43, 640-01(July 25, 2012). "[I]f objective medical evidence does not substantiate the person's statements . . . consider all of the evidence in the case record, including . . . daily activities, medications or other treatments . . . the nature and frequency of the person's attempts to obtain medical treatment for symptoms; and statements by other people about the person's symptoms." 77 Fed. Reg. 43, 640-01(July 25, 2012)). The ALJ specifically outlined the two-step process required by SSR 12-2p and SSR 96-7p. (R. at 82); 77 Fed. Reg. 43, 640-01(July 25, 2012). Additionally, the ALJ specifically followed the guidelines outlined in the two-step process by considering Plaintiff's claims, carefully comparing

---

[10] Following the ALJ's decision, SSR 96-7p was superseded by SSR 16-3p, effective March 28, 2016. Social Security Ruling 16-3p; 81 Fed. Reg. 14, 166 (March 16, 2016); 81 Fed. Reg. 15, 776 (March 24, 2016).

statements to Plaintiff's medical records, testimony, and daily activities. (R. at 82-89) SSR 96-7p; 77 Fed. Reg. 43, 640-01(July 25, 2012).

Though Plaintiff's medical records show evidence of multiple MDIs and consistent self-reported severe pain, numbness, weakness, fatigue, trouble concentrating, and dizziness, extensive diagnostic testing and examinations showed unremarkable results excepting trace positive anti-CCP, mild stenosis with minimal degenerative changes, and consistent trigger point tenderness. (R. at 120-23, 137-39, 339-400, 441-43, 560-62, 575-78, 580-84, 590-603, 650-52). As this court has previously held, "the mere existence of . . . impairments does not reveal the extent to which they limit [a claimant's] ability to work or undermine the ALJ's determination in that regard." *Moore v. Colvin*, Civil Action No. 2:14-CV-00950-RDP, 2015 U.S. Dist. LEXIS 110753 (N.D. Ala. Aug. 21, 2015) (quoting *Moore v. Barnhart*, 405 F.3d 1208 (11th Cir. 2005)). The ALJ further noted that Plaintiff experienced no range of motion limitations, synovitis or joint degeneration, or any other type of degeneration frequently experienced with Plaintiff's diagnosed conditions and symptoms. (R. at 580-84); *See Harrison v. Comm'r of Soc. Sec.,* 569 F. App'x 874, 87 (11th Cir. 2014) (upholding ALJ's denial of SSI) ("[P]hysical examinations . . . were consistently unremarkable, and [] never found . . . any of the paradigmatic symptoms frequently associated with the most severe cases of fibromyalgia, such as joint swelling, synovitis, or tender trigger points"). Plaintiff's physicians' characterizations of symptoms varied from qualifying symptoms as severe and debilitating as a result of fibromyalgia to "somewhat vague" with "no clear cause for … pain," and no treating physician imposed any physical limitations on the Plaintiff, one physician even suggested Plaintiff stop taking pain medication. (R. at 87, 89, 425, 577, 902, 985-91).

The court also concludes that the ALJ properly considered Plaintiff's activities and testimony in conjunction with the record as a whole, in accordance with SSR 96-7p. (R. at 82-89); 20 C.F.R. § 404.1520a; *Harper v. Colvin*, No. 6:13-cv-02114-LSC, 2015 U.S. Dist. LEXIS 15793, at *18 (N.D. Ala. Feb. 10, 2015) ("discrepancy between [physician's] opinion and Plaintiff's treatment records and reported activities provide substantial evidence for the ALJ's decision"). Plaintiff's own testimony regarding her activities -- including yoga, driving, and walking her dog -- suggests that her symptoms are less debilitating than she claimed, and provides support for the ALJ's conclusion. (R. at 25-29, 31-32, 36, 80. 87-88, 267-74, 644, 919-21, 928, 933); *See Wolfe v. Chater*, 86 F.3d 1072 (11th Cir. 1996) (affirming the ALJ's decision to discredit claimant's statements regarding severity of symptoms as a result of activities contradictory to level of disability reported); *See also Pennington v. Comm'r of Soc. Sec.*, 652 F. App'x 862 (11th Cir. 2016) (holding "contradictory statements [regarding disabling symptoms] provide an additional basis of support for the ALJ's conclusion [claimant] was exaggerating his functional limitations"). Further, the record, including both medical evidence and Plaintiff's own statements, indicates Plaintiff's symptoms were not as debilitating as claimed because she only utilized medication and treatment modalities that treated her symptoms, and failed on multiple occasions to follow through with follow-up appointments, prescribed treatments (including CPAP therapy), or take advantage of prescription medications or treatment regimens suggested by her various treating physicians. (R. at 86-89, 583, 639, 761, 763, 970-71, 977-78); SSR 96-7p; *McCloud v. Barnhart*, 166 F. App'x 410, 417 (11th Cir. 2006) ("Given [plaintiff's] non-compliance and lack of treatment, the ALJ properly concluded that the medical evidence refuted [plaintiff's] complaints"); *See also*, 20 C.F.R. § 404.1529(c)(3)(iv)-(v).

Likewise, Plaintiff's husband's testimony was contradictory to the objective medical evidence and largely duplicative of Plaintiff's statements. (R. at 40-41, 89). As a result, the ALJ was not required to give substantial weight to the husband's statements, nor was she obligated to explain in any more detail than she did why she gave it little weight. *Iordan v. Comm'r, SSA*, 579 F. App'x 775, 779 (11th Cir. 2014) (holding ALJ did not err in failing to address fiancé's testimony as it was duplicative or contrary to [plaintiff's] statements).

The only items of evidence provided by Plaintiff to show the ALJ erred in assessing credibility were findings of tender trigger points, repeated findings of "pain," a diagnosis of chronic pain, the "Fibromyalgia Medical Assessment," and a "Physical Performance Test." (Pl.'s Mem. at 23-24; R. at 851, 985-91). The ALJ did not state that she doubted Plaintiff's statements that she was in pain. Nor, for that matter, did she call into doubt any part of the record supporting Plaintiff's claim about tender points or chronic pain. What the ALJ discredited were Plaintiff's statements regarding intensity, persistence, and limiting effects of the symptoms. (R. at 82). Likewise, the "Fibromyalgia Medical Assessment" simply does not provide a basis for reversal of the ALJ's decision as it was completed nearly six months after the ALJ's decision, thereby making it irrelevant to the assessment of this claim. (R. at 985-91); *See Wilson*, 647 F. App'x 951, 952 (11th Cir. 2016) ("we may not consider evidence that was presented to the Appeals Council but not to the ALJ").

The "Physical Performance Test" was presented to the ALJ and was also properly considered. (R. at 86, 851-52). Plaintiff notes that the examiner stated that there was "a fair correlation of subjective pain with all activities." (Pl.'s Mem. at 23-24; R. at 86, 851-52). "An ALJ need not give a treating physician's opinion considerable weight if the claimant's own testimony regarding her daily activities contradicts that opinion." *Ward v. Astrue*, 286 F. App'x

16

647, 649 (11th Cir. 2008) (citing *Phillips v. Barnhart,* 357 F.3d 1232, 1241 (11th Cir. 2004)). As the only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision and whether the correct legal standards were applied, a single opinion that there was a *fair correlation* of subjective pain with activities is insufficient to undermine substantial evidence that otherwise exists and supports the ALJ's credibility determination. (Pl.'s Mem. at 23-24; R. at 86, 851-52); 42 U.S.C. § 405(g); *See also Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) ("[t]his court's sole function is to determine whether there is substantial evidence in the record to support the conclusion"); *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988) ("[t]he scope of judicial review is limited to determining if there exists in the record, as a whole, substantial evidence to support the findings").

Finally, in determining the credibility of statements, SSR 96-7p requires the ALJ to consider the *entire* case record, and "may find all, only some, or none of an individual's allegations to be credible." (SSR 96-7p). Considering the entire record, as required by SSRs 12-2p and 96-7p, substantial evidence supports the ALJ's determination that Plaintiff's and her husband's statements concerning intensity, persistence, and limiting effects of symptoms were not entirely credible. (R. at 82-89); SSR 96-7p; 77 Fed. Reg. 43, 640-01(July 25, 2012); *See also Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011) ("[t]he question is not . . . whether ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it"). For these reasons, the court finds that the ALJ properly considered the credibility of witnesses under SSR 12-2p Policy Interpretation Ruling.

  C.  **The ALJ Properly Assessed RFC Following an MDI of Fibromyalgia**

When assessing Residual Function Capacity, SSR 12-2p requires the ALJ to consider all relevant evidence in the case record, consider all effects of MDIs including ones that are not

severe, and specifically for fibromyalgia, "consider a longitudinal record whenever possible because symptoms of fibromyalgia can wax and wane." 77 Fed. Reg. 43, 640-01(July 25, 2012). The ALJ properly considered the Plaintiff's fibromyalgia and all other symptoms in examining the entire record to determine the extent to which they can reasonably be accepted as consistent with the objective medical evidence. (R. at 82-89); *See* 20 C.F.R. § 404.1529; SSRs 96-4p, 96-7p. The ALJ further explained her determination by detailing the records which led to her conclusion and the reasoning behind her determination. (R. at 82-89).

Plaintiff contends that the ALJ failed to acknowledge the Physical Performance Test performed on Plaintiff in 2013, referring to the test as "the actual Residual Function Capacity Test." (Pl.'s Mem. at 25, R. at 851-52). However, "the task of determining a claimant's [RFC] and ability to work is within the province of the ALJ, not of doctors." *Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010).

Further, Plaintiff alleges the ALJ "misrepresented the testimony . . . and the record as a whole" and made "incorrect assumptions" regarding Plaintiff's medications and treatment. (Pl.'s Mem. at 25-26). The ALJ's interpretation of the facts or testimony is not a matter for this court as "the district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Plaintiff further argues that the VE's testimony, in combination with the "Fibromyalgia Medical Assessment," was contradictory to the ALJ's RFC determination. (Pl.'s Mem. at 27; R. at 36-40). Again, the ALJ was free to conclude the "Fibromyalgia Medical Assessment" was

invalid as it was completed nearly six months after the ALJ's decision. (R. at 985-91). Even if the "Fibromyalgia Medical Assessment" had been available for the ALJ to consider in conjunction with the VE's testimony, this argument would fail because the ALJ "is not required to order a consultative examination as long as the record contains sufficient evidence for the [ALJ] to make an informed decision." *Ingram v Comm'r of SSA*, 496 F.3d 1253, 1269 (11th Cir. 2007).

For these reasons, the court finds the ALJ properly considered Plaintiff's fibromyalgia and all other relevant evidence in assessing Plaintiff's RFC in accordance with SSR 12-2p and 20 C.F.R. § 404.1545(a)(3). 77 Fed. Reg. 43, 640-01(July 25, 2012).

## VI. Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and the proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed. A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this June 28, 2017.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE